# Ballard Spahr LLP

2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
TEL 424.204.4400
FAX 424.204.4350
www.ballardspahr.com

Marcos D. Sasso
Tel: 424.204.4324
sassom@ballardspahr.com

July 16, 2018

*Via ECF*

The Honorable William H. Alsup
U.S. District Court for the Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

Re   Jeremiah Revitch ("Plaintiff") v. Citibank, N.A. ("Citibank")
     Case No. 3:17-cv-06907-WHA

Dear Judge Alsup:

Pursuant to the Court's July 12, 2018 Order, this responds to Plaintiff's July 11, 2018 letter (the "Letter"). Tellingly, the Letter does not actually describe, categorize, or elucidate any of the discovery requests at issue. Plaintiff simply strings together cherry-picked cites from various cases, taking the wholly-improper position that Citibank must produce all requested information without limitation, question or dispute. Plaintiff seeks to compel Citibank to collect and produce millions of customer records relating to calls made by Citibank to telephone numbers provided by customers simply in the name of class discovery. However, the mere filing of a putative class action does not permit a fishing expedition of the sort sought by Plaintiff here. Plaintiff's request should be denied.

**Class Discovery Is Not Relevant Or Proportional To The Needs Of This Case**: The parties have already completed discovery establishing that Plaintiff's experience is not one that makes him similarly situated to putative class members. On June 20, 2018, the parties deposed Alan B. Exelrod, who is a current Citibank credit card customer. Citibank's records reflect that Plaintiff's telephone number 415-987-9800 was added to Mr. Exelrod's Citibank credit card account via an online change on March 28, 2017. During his deposition, Mr. Exelrod confirmed that the 9800 number is not his, and while he does not recall specifically adding the number to his account, he has no reason to believe that Citibank's records are inaccurate. Exelrod Tr. 14:4-19. Mr. Exelrod testified that, if Citibank's records show the number was added, he is "the only person that would have done that" and "there was no intention to mislead anybody by providing that number." *Id.* 13:15-24. Mr. Exelrod simply "wanted to make sure [he] provided [Citibank] the correct number," i.e., his own telephone number, 415-987-4800 (*id.* 13:1-10), which, with the exception of a single digit, is nearly identical to Plaintiff's number. After the number was added, Citibank made nine calls, and sent two text messages, to the 9800 number. Citibank spoke to Plaintiff only once, on July 19, 2017, and after Plaintiff identified the 9800 number as his, not Mr. Exelrod's, Citibank blocked the number from any further calls. Plaintiff claims he received subsequent calls. Citibank has repeatedly requested evidence substantiating this claim; Plaintiff has never provided ***any*** evidence in support of this claim.

The Honorable William H. Alsup
July 16, 2018
Page 2

In the Letter, Plaintiff ignores these critical facts, which not only render Plaintiff atypical of putative class members but defeat his claim. These facts demonstrate that establishing prior express consent is an individual issue that defeats class certification. *See Fields v. Mobile Messengers Am., Inc.*, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) (denying certification based on consent); *Saulsberry v. Meridian Fin. Servs.*, 2016 U.S. Dist. LEXIS 86419 (S.D. Cal. April 14, 2016) (same); *Blair v. CBE Group, Inc.*, 309 F.R.D. 621 (C.D. Cal. Aug. 26, 2015) (same); *Selby v. LVNV Funding, LLC*, 2016 U.S. Dist. LEXIS 83940 (S.D. Cal. June 22, 2016) (same). Similarly, because "prior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call in question is placed" (*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1039 (9th Cir. 2012)), Citibank had "prior express consent" to call the ***particular*** number Mr. Exelrod provided regarding his ***particular*** debt ***prior to*** the calls being placed. As the Federal Communications Commission ("FCC") has explained, "interpretation of the statutory phrase 'prior express consent' [under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA")] [is] grounded in conceptions of reasonable reliance." *ACA International v. Federal Communications Commission*, 885 F.3d 687, 708 (D.C. Cir. 2018) ("*ACA*"). For that reason, the FCC has "specifically declined to adopt" a "strict liability rule" for calls made to numbers provided by a customer but that have since been reassigned to a new subscriber. *Id.* There is no factual or legal basis for reaching a different conclusion for calls made to numbers mistakenly provided by customers. In both situations, the caller is entitled to reasonably rely upon the phone number provided as "prior express consent." Allowing the caller the opportunity to learn about an error by the customer in providing a number, before assigning the type of strict liability the FCC has specifically eschewed, "give[s] effect to a caller's reasonable reliance" on the consent provided by the intended recipient of the call, while simultaneously balancing the purpose of the TCPA to prevent unwanted phone calls. *See, e.g., id.* Clearly, Plaintiff's number was mistakenly added by Mr. Exelrod to his account. Allowing Plaintiff to twist that mistake into a demand for overly broad, invasive class discovery does nothing to advance the privacy interests that underlie the TCPA, and reflects the type of litigation abuse that the FCC is looking to curtail. At a minimum, these facts coupled with the current uncertainty of the law (as discussed below) warrant a stay.

**Discovery Should Be Stayed Pending Rulings By The FCC and Ninth Circuit**: The expansive and unnecessary production of extremely sensitive customer records is not "relevant [and] proportional to the needs of the case" because the FCC, and the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, Case No. 14-56834, are presently considering two issues that could effectively bring this case (and all TCPA cases) to an end: (1) what is a "called party," and (2) what constitutes an automatic telephone dialing system ("ATDS"), under the TCPA. As a result, Citibank is moving to stay this case. The FCC's Public Notice (issued on May 14, 2018) and the Ninth Circuit's request for briefing in *Marks* were issued in response to the D.C. Circuit's recent decision in *ACA International v. Federal Communications Commission*, striking down the FCC's prior interpretations of an ATDS and most recent treatment of "called party" in the context of wrong party calls. The Second and Third Circuits have adopted *ACA*'s reasoning, holding that to qualify as an ATDS, the ATDS must have the current, or present, capacity to operate as an ATDS absent any modifications to the device's hardware or software. *See King v. Time Warner Cable Inc.*, No. 15-2474-cv, 2018 U.S. App. LEXIS 17880, at *19 (2d Cir. June 29, 2018); *Dominguez v. Yahoo, Inc.*, No. 17-1243, 2018 U.S. App. LEXIS 17436, at *5-6 (3d Cir. June 26, 2018). A stay is warranted because Citibank's dialing system does ***not*** have the ***current or present*** capacity "to store or produce telephone numbers to be called, using a random or sequential number generator . . . [and] to dial such numbers" in order to qualify as an ATDS. In addition, to proceed, Plaintiff must be a "called party" under the TCPA,

and the FCC is specifically addressing what it means to be a "called party." Whether Plaintiff was called with an ATDS and whether he is a "called party" under the unique facts of this case will depend on how the FCC and Ninth Circuit rule. It makes no sense to waste time and resources conducting overly-broad and invasive class discovery regarding issues that may be rendered moot once the FCC and Ninth Circuit rule.

**Citibank's Arbitration Agreement Precludes Discovery Relating To Citibank Customers**: Each customer is obligated under Citibank's arbitration agreement, which applies to each Citibank credit card account, to resolve claims in individual arbitration, not as part of a class action. It is well established that individuals whose contracts contain a valid arbitration provision may not be members of a certified class. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.5 (11th Cir. 1987); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007); *Pablo v. ServiceMaster Glob. Holdings Inc.*, No. C 08-03894 SI, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 862 (D. Md. 2013). Plaintiff's counsel has never requested "authority" or a copy of Citibank's arbitration agreement. Regardless, Citibank has produced the arbitration agreement, and Plaintiff's counsel already knows this since Citibank asserted arbitration as a defense to class discovery in a prior case brought by counsel.

**The Burden Of Producing Millions Of Customer Records is Axiomatic**: The burden here is self-evident. *See Gusman v. Comcast Corp.*, 298 F.R.D. 592, 597 (S.D. Cal. 2014) (denying to compel production of dialer list due to "significant burden" especially when the list did not bear on claims at issue). Plaintiff has never articulated a method of identifying a class of non-customers (or any class of which he is a member) that can be identified on a class-wide basis. During meet-and-confer efforts, Plaintiff's counsel dismissed Citibank's burden out of hand and simply demanded production of all customer records. If Plaintiff articulates the precise class he intends to certify, and a method of identifying that class, Citibank can submit full briefing to the Court regarding burden.

**Significant Customer Privacy Issues Are At Stake**: Plaintiff misunderstands the privacy objection. The call data and records demanded would disclose extremely sensitive personal identifying and financial information of millions of customers. It is not an issue of protecting the information from public disclosure, but rather protecting Citibank's customers' own expectations that their private information will not be disclosed absent compelling reasons. Given the privacy rights at stake and complete lack of necessity for the requested discovery as discussed, the request should be denied.

**Plaintiffs Should Pay All Costs Associated With Any Production**: In the event the Court grants the Motion, Plaintiff should be charged with paying all costs, including outside consultant fees and costs, associated with trying to obtain the requested information. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (ordering cost of burdensome discovery to requesting party); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *6 (N.D. Ill. Sept. 24, 2013) (same); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002) (shifting cost of discovery due to substantial cost and burden). Given that customer claims must be arbitrated and Plaintiff is uniquely situated apart from any putative class member, the likelihood of discovering critical information is low, as is the importance of the discovery in resolving issues at stake in the litigation and the relative benefits to the parties of obtaining the information. The estimated high cost associated with the proposed discovery relative to the low value the requested discovery has in relation to resolving the actual issues in the case warrants imposing all costs associated with the production, including any expert costs, on Plaintiff.

The Honorable William H. Alsup
July 16, 2018
Page 4

Respectfully submitted,

Marcos D. Sasso
Counsel for Defendant Citibank, N.A.

Enclosure


cc:     Thomas Reyda, Esq. (w/ encl.)