# EXHIBIT D

Case No. 14-56834

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

JORDAN MARKS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

*Plaintiff - Appellant,*

v.

CRUNCH SAN DIEGO, LLC,

*Defendant - Appellee.*

---

On Appeal from Order of the
United States District Court for the Southern District of California
District Court No. 3:14-cv-00348 BAS BLM

---

**DEFENDANT-APPELLEE'S RESPONSE TO PLAINTIFF-APPELLANT'S
BRIEF REGARDING DECISION IN *ACA INT'L v. F.C.C.***

**GREENBERG TRAURIG, LLP**
Ian C. Ballon (CA SBN 141819)
Lori Chang (CA SBN 228142)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-586-7700
Facsimile: 310-586-7800

*Attorneys for Defendant-Appellee*
CRUNCH SAN DIEGO, LLC

## **TABLE OF CONTENTS**

                                                                                  **Page**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT......................................................................................................2

      A.      Because *ACA Int'l* Set Aside the FCC's Expanded Definition of ATDS Reflected In Its 2003, 2008, and 2015 Rulings, Only the TCPA's Statutory Definition of ATDS Applies ..................................2

      B.      Ninth Circuit Precedent Does Not Support Marks's Overbroad Definition of ATDS ................................................................................8

III. CONCLUSION..................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*ACA Int'l v. F.C.C.*,
 885 F.3d 687 (D.C. Cir. 2018) ................................................................................*passim*

*Am. Great Lakes Ports Ass'n v. Zukunft*,
 No. CV 16-1019 (RC), 2018 WL 1342468 (D.D.C. Mar. 15, 2018) ...................5

*CFM Communs., LLC v. Mitts Telecasting Co.*,
 424 F. Supp. 2d 1229 (E.D. Cal. 2005) ..............................................................6

*Cooper Indus., Inc. v. Avail Servs. Inc.*,
 543 U.S. 157 (2004) ............................................................................................7

*Dominguez v. Yahoo, Inc.*,
 629 F. App'x. 368 (3d Cir. 2015) ........................................................................4

*Dominguez v. Yahoo!, Inc.*,
 8 F. Supp. 3d 637 (E.D. Pa. 2014) ......................................................................9

*Encino Motorcars, LLC v. Navarro*,
 136 S. Ct. 2117 (2016) .....................................................................................5, 7

*Encino Motorcars, LLC v. Navarro*,
 138 S. Ct. 1134 (2018) .....................................................................................7, 8

*Marks v. Crunch San Diego, LLC*,
 55 F. Supp. 3d 1288 (S.D. Cal. 2014) ........................................................2, 6, 8

*Marshall v. CBE Group, Inc.*,
 No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852 (D. Nev. Mar.
 30, 2018) ............................................................................................................3

*Meyer v. Portfolio Recovery Assocs. LLC*,
 707 F.3d 1036 (9th Cir. 2012) ............................................................................9

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
 523 F.3d 1051 (9th Cir. 2008) ............................................................................6

*Peck v. Cingular Wireless, LLC*,
   535 F.3d 1053 (9th Cir. 2008) ........................................................................... 3, 4

*Public Citizen v. Nuclear Regulatory Comm'n*,
   901 F.2d 147 (D.C. Cir. 1990) .................................................................................. 3

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ............................................................................. 5, 8, 9

**Federal Statutes**

29 U.S.C. § 213(b)(10)(A) ........................................................................................... 7

47 U.S.C. § 227 ........................................................................................................... 1

47 U.S.C. § 227(a)(1) ............................................................................................ 1, 6

**Other Authorities**

The Chicago Manual of Style § 6.30 (16th ed. 2010) ................................................. 7

*Commissioners Comment on Circuit Court Ruling in ACA v. FCC*,
   insideARM.com (March 20, 2018),
   https://www.insidearm.com/news/00043820-commissioners-
   comment-circuit-court-rulin/ ................................................................................. 4

I.  **INTRODUCTION**

Marks's argument that the Textmunication platform qualifies as an "automatic telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") even if it lacks the capacity to generate random or sequential phone numbers is unsupported by the plain terms of the statute and this Court's precedent. Rather, Marks's appeal is premised on FCC rulings that have now been invalidated by *ACA Int'l v. F.C.C.*, 885 F.3d 687 (D.C. Cir. 2018). Marks contends that the FCC expanded the ATDS definition to include equipment that merely can store phone numbers on a list and dial them. Dkt. 15 at 7. The D.C. Circuit struck down that interpretation as "untenable" based on the statute and "impermissible" in its scope because it would "render every smartphone an ATDS." 885 F.3d at 697-98. *ACA Int'l* set aside various FCC rulings defining ATDS, leaving intact the statutory definition under 47 U.S.C. § 227(a)(1), which cannot be read to mean that a device that simply stores and dials phone numbers is an ATDS because the statute requires the "equipment" to use a "random or sequential number generator" (or at least have the *capacity* generate phone numbers randomly or sequentially). *ACA Int'l*, 885 F.3d at 700, 703.[1] Here, the undisputed facts show that the Textmunication platform lacks the

---

[1] An ATDS is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to

1

capacity to generate phone numbers in any manner (let alone randomly or sequentially). *See Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291-92 (S.D. Cal. 2014). It is therefore not an ATDS under the statute, and the district court's judgment must be affirmed.

## II. ARGUMENT

### A. Because *ACA Int'l* Set Aside the FCC's Expanded Definition of ATDS Reflected In Its 2003, 2008, and 2015 Rulings, Only the TCPA's Statutory Definition of ATDS Applies

Marks seeks reversal based on the now-vacated former FCC definition that "equipment that has the capacity to store telephone numbers in a list or database," even if it "does not have the capacity to generate telephone numbers randomly or sequentially," qualifies as an ATDS. Dkt. 15 at 13.[2] *ACA Int'l* held that definition constituted an "unreasonably expansive interpretation of the statute." 885 F.3d at 692. Marks argues that *ACA Int'l* invalidated the 2015 FCC ruling but not its prior orders defining ATDS. *See* Dkt. 71 at 3. But the D.C. Circuit expressly set aside the 2003 and 2008 declaratory rulings on this issue and had jurisdiction to do so because the FCC's 2015 ruling purported to clarify its past interpretations and

---

dial such numbers." 47 U.S.C. § 227(a)(1).

[2] Marks asserts on appeal that the district court erred "when it invalidated the [FCC's] clarification of an 'automatic telephone dialing system' under the [TCPA] as articulated in the 2003 and 2008 Declaratory Rulings . . . ." Dkt. 15 at 1-2.

2

constituted formal rulemaking. *See ACA Int'l*, 885 F.3d at 701.[3] Marks's contention that the D.C. Circuit did not have authority to review the FCC's 2003 and 2008 orders (*see* Dkt. 71 at 3) was rejected in *ACA Int'l* and cannot be relitigated before this Court. *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) (concluding that the Eleventh Circuit had exclusive jurisdiction under the Hobbs Act to review an FCC report and order, and the appellate decision was "binding outside of the Eleventh Circuit"). Because the D.C. Circuit had exclusive jurisdiction to review the 2015 FCC order,[4] its decision

---

[3] Specifically, the D.C. Circuit expressly rejected the argument that it lacked jurisdiction to review the 2003 and 2008 declaratory rulings on this issue because [t]he agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform," and the appeal of those orders was not untimely because "[p]etitioners covered their bases by filing petitions for both a declaratory ruling and a rulemaking concerning that issue and related ones," and the FCC's declaratory ruling "purported to 'provid[e] clarification on the definition of "autodialer,"' and denied the petitions for rulemaking on the issue. . . . The ruling is thus reviewable on both grounds." *Id.*

Marks concedes that "the D.C. Circuit could address the FCC's earlier rulings only to the extent that they were raised in the 2015 Ruling." Dkt. 71 at 4 (citing *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 151-52 (D.C. Cir. 1990). *Public Citizen* illustrates this point. In that case, the Court explained that "where an agency's actions show that it has not merely republished an existing rule in order to propose minor changes to it, but has reconsidered the rule and decided to keep it in effect, challenges to the rule are in order." *Id.* at 150. That is exactly what the 2015 FCC ruling purported to do, and therefore "re-opened" the FCC's prior ATDS interpretations for review by the D.C. Circuit. *Id.* at 151 (holding that the court was not time-barred under the Hobbs Act from reviewing an issue that the Nuclear Regulatory Commission had "reopened, reexamined, and reaffirmed" in a subsequent decision).

[4] *See, e.g.*, *Marshall v. CBE Group, Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 WL

3

invalidating the FCC's expanded ATDS definition as "unreasonable" and "impermissible"[5] is binding on this Court. *Peck*, 535 F.3d at 1057.[6] The Court therefore cannot apply the broader ATDS definition from the 2003 FCC ruling, which the FCC purported to clarify in its 2015 Order and which Marks argues "makes it clear that a device cannot be excluded from the definition of ATDS only because it dials from a given set of numbers rather than from randomly or sequentially generated numbers." Dkt. 71 at 6-7. *ACA Int'l* specifically rejected the interpretation that an ATDS includes "dial[ing] from an externally supplied list of numbers" "even if it has no capacity itself to generate random or sequential numbers." 885 F.3d at 702.[7]

---

1567852, at *5 n.4 (D. Nev. Mar. 30, 2018) (ruling that the "D.C. Circuit's decision [in *ACA Int'l*] is binding on this Court because appellate courts have exclusive jurisdiction to determine the validity of all FCC final orders and the Judicial Panel on Multidistrict Litigation ha[d] consolidated the various appeals in that case in the D.C. Circuit"). Marks previously conceded this point. *See* Marks's Mot. for Continuance of Oral Argument (Dkt. 56-1) at 3-4 (stating that *ACA Int'l* would be binding on this Court).

[5] 885 F.3d at 700; *see also id.* at 701-02 (abrogating the 2003 and 2008 FCC interpretations of ATDS by setting aside the 2015 ruling).

[6] It is doubtful that the FCC will seek Supreme Court review of the D.C. Circuit's holding, which was praised by the new FCC Chairman for restoring the statutory definition of an ATDS and rolling back regulatory overreach. *See Commissioners Comment on Circuit Court Ruling in ACA v. FCC*, insideARM.com (March 20, 2018), https://www.insidearm.com/news/00043820-commissioners-comment-circuit-court-rulin/.

[7] The Third Circuit held that the 2015 FCC ruling, while "hardly a model of clarity," did not "read out the 'random or sequential number generator' requirement," and instead concluded "that an autodialer must be able to store or

4

Following *ACA Int'l*, this Court must apply the plain terms of the statute.[8]
However, Marks's argument that "the phrase 'using a random or sequential

---

produce numbers that *themselves* are randomly or sequentially generated." *Dominguez v. Yahoo, Inc.*, 629 F. App'x. 368, 372, 373 n.2 (3d Cir. 2015). Crunch had previously argued, based on this interpretation, that the 2015 FCC ruling confirmed that the FCC did not purport to change the statutory definition of ATDS. The D.C. Circuit, however, concluded that the 2015 ruling left "a significant fog of certainty about how to determine if a device is an ATDS," and struck down what it found to be the FCC's overbroad and inconsistent constructions of ATDS. 885 F.3d at 702-3. While the D.C. Circuit noted in dicta it "might be permissible for the [FCC] to adopt either interpretation" (*id.*), the FCC can only do so through future rulemaking (as Marks concedes, Dkt. 71 at 8). But the current Commission has no intention to do so. *See supra* n.6. The Court must therefore construe the statute based on its plain terms. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126-27 (2016) (remanding to the Ninth Circuit to interpret a statute without placing controlling weight on an agency's that the Supreme Court held did not merit *Chevron* deference because it was issued without reasoned explanation). The Court also cannot adopt the vacated rule on its own (which requires formal rulemaking, since it would go well beyond the plain terms of the statute) or based on prior FCC orders abrogated by *ACA Int'l*. *See, e.g.*, *Am. Great Lakes Ports Ass'n v. Zukunft*, No. CV 16-1019 (RC), 2018 WL 1342468, at *3 (D.D.C. Mar. 15, 2018) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must initiate another rulemaking proceeding if it would seek to confront the problem anew.").

[8] In construing the TCPA's ATDS provision, this Court has previously determined "that the statutory text is clear and unambiguous," and that, "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing § 227(a)(1)). While *Satterfield* involved a case where there was no evidence presented on *capacity*, here the unrefuted evidence establishes that the Textmunication system has no capacity to generate numbers of any kind, let alone phone numbers that are randomly or sequentially generated. *See* Crunch's Answering Brief [Dkt. 22] at 5-13, 21-22.

5

number generator' must modify 'produces numbers' because it makes no sense for a device to 'store' numbers using a random or sequential number generator" (Dkt. 71 at 6), is not supported by a plain reading of the statute. Rather, Marks's construction is rooted in his expert Jeffrey Hansen's inadmissible opinion that "generating numbers" "have nothing to do with computer storage, only the production," which in turn is premised on his unqualified legal interpretation of the FCC's 2003 declaratory ruling, and not on an examination of the platform (which he did not perform, *see* SER 133-34, 138, 162-63). ER 200 (Hansen Decl. ¶ 12); SER 204-07 (Hansen Tr. 137:12-140:5 (admitting his conclusions are based on his interpretation of the TCPA and FCC rulings)).[9] Further, Marks's assertion that "if a device already has the numbers stored, there would be no need to produce or generate numbers" (Dkt. 71 at 6) illustrates the district court's conclusion that the phrase "using a random or sequential number generator" under 47 U.S.C. § 227(a)(1) would be "superfluous" if "the statute meant to only require that an

---

[9] *See Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d 1051, 1059-60 (9th Cir. 2008) ("'[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'"); *CFM Communs., LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1234 (E.D. Cal. 2005) ("The meaning of federal regulations is a question of law, not a question of fact."). It is also based on Hansen's "technical" definition of the terms, as opposed to their ordinary meanings. *See* SER 086-87 (Hansen Tr. 19:21-20:8 (stating that the statute "would be clearer was [sic] not for me or any technical person but for the layperson" if Congress rewrote the definition of ATDS to "[take] that statement after the comma out" so that "they left it simply as the 'store or produce'")).

6

ATDS include any list or database of numbers." *Marks*, 55 F. Supp. 3d at 1292 (stating a statute must be construed "to prevent any clause, sentence, or word from being superfluous or insignificant") (citing *Alaska Dep't of Envtl. Conservation v. Envtl. Prot. Agency*, 540 U.S. 461, 468 n.13 (2004); *Cooper Indus., Inc. v. Avail Servs. Inc.*, 543 U.S. 157, 166 (2004)).

That phrase also cannot be grammatically read to modify only the word "produce" from the preceding clause, "to store or produce telephone numbers to be called," based on the disjunctive "store *or* produce." Dkt. 71 at 5. During oral argument, this Court sought clarity regarding the comma separating the two clauses and asked which terms the phrase, "using a random or sequential number generator," modifies. "A dependent clause that precedes a main clause should be followed by a comma." The Chicago Manual of Style § 6.30 (16th ed. 2010). Thus, the phrase "to store or produce telephone numbers to be called" must be read as dependent on the main clause, "using a random or sequential number generator"; in other words, the main clause "using a random or sequential number generator" modifies *either* term contained in the dependent clause "to store or produce telephone numbers to be called"—*i.e.*, "store" *or* "produce." Consistent with this view, the Supreme Court recently construed a statute's use of the disjunctive and held that a "natural reading" of "or" in a sentence "covers any combination of its nouns, gerunds, and objects." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134,

7

1142 (2018).[10] Conversely, for Marks's construction to be correct, the statute would have to read "equipment which has the capacity (A) to store[,] or produce telephone numbers to be called [no comma] using a random or sequential number generator; and (B) to dial such numbers," which it plainly does not.

A plain reading of the statute therefore supports that the phrase "random or sequential number generator" must "have some limiting effect," and "cannot reasonably refer broadly to any list of numbers" as that would "nullify the entire clause." *Marks*, 55 F. Supp. 3d at 1292. Marks's overbroad construction, by contrast, would revive by judicial fiat regulations struck down as arbitrary and capricious and contravene the holding in *ACA Int'l* that the statutory definition of ATDS cannot be construed to have "an eye-popping sweep" where "every smartphone [would] qualif[y] as an ATDS," 885 F.3d at 697-98.

### B. Ninth Circuit Precedent Does Not Support Marks's Overbroad Definition of ATDS

Marks's interpretation is neither supported by the statute nor this Court's precedent. In holding that the statute's focus is on "capacity," *Satterfield*, 569 F.3d

---

[10] *Encino Motorcars* involved an exemption from the Fair Labor Standards Act's overtime-pay requirements that applies to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles" under 29 U.S.C. § 213(b)(10)(A). In holding that service advisors constitute "salesmen" and overruling this Court's construction that the exemption does not apply to salesman "'primarily engaged in . . . servicing automobiles," the Supreme Court ruled that the statute's "use of 'or' to join 'selling' and 'servicing' suggests that the exemption covers a salesman primarily engaged in either activity." *Id.* at 1141.

8

at 951, the Court did not rule, as Marks asserts, that "equipment that has the capacity to dial stored telephone numbers is an ATDS." Dkt. 71 at 2. Marks's explanation that *Satterfield* found "a genuine issue of material fact existed as to whether a device was an ATDS based on an expert's testimony that the telephone system at issue 'stored telephone numbers to be called and subsequently dialed them,'" is not forthcoming. Dkt. 71 at 11. The quoted language from *Satterfield* (which omits the internal quotations), comes from the expert's report, not the Court's own pronouncements, and was taken out of context. In fact, *Satterfield* concluded that the expert "never specifically declared that this equipment had the requisite capacity," but found there was "conflicting testimony" between the expert's report and testimony by a fact witness. *Satterfield*, 569 F.3d at 951. Marks's reliance on *Satterfield* is thus based on a misreading of that decision.[11]

The Court's decision in *Meyer v. Portfolio Recovery Assocs. LLC* also does not support Marks's reading of the statute. *Meyer* involved use of a predictive dialer where the defendant "d[id] not dispute that its predictive dialers have the capacity described in the TCPA." 707 F.3d 1036, 1043 (9th Cir. 2012). The Court

---

[11] A previous court held "[t]his citation to *Satterfield* is deceptive. The Ninth Circuit, in *Satterfield,* quoted Mr. Snyder's report only to recount his opinions . . . and specifically noted that Mr. Snyder's report had not declared that the equipment had the requisite capacity. . . . The court did not adopt Mr. Snyder's views." *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 n.6 (E.D. Pa. 2014), *vacated and remanded on other grounds*, 629 F. App'x. 368 (3d Cir. 2015).

9

deemed that "sufficient to determine that [the defendant] used an [ATDS]" because the 2003 FCC ruling defined ATDS to include predictive dialers. *Id.*

### III. CONCLUSION

For the foregoing reasons, *ACA Int'l* requires affirmance in this case because it invalidated the FCC's expanded definition of ATDS, and the district court therefore properly applied the correct legal standard. Because it is undisputed that the Textmunication platform lacks the capacity to generate random or sequential phone numbers,[12] it is not an ATDS under the statute.[13]

Dated: May 4, 2018                    GREENBERG TRAURIG, LLP

                                      By: /s/ Ian C. Ballon
                                      *Attorneys for Defendant-Appellee*,
                                      Crunch San Diego, LLC

---

[12] Indeed, Marks argued in his opening brief that the district court "should have followed *Meyer* as approving the [FCC's] clarified definition of an ATDS" in its 2003 ruling. Dkt. 15 at 23. Even Marks's expert Jeffrey Hansen agreed that the platform is not capable of generating numbers randomly, sequentially, or in any other way. *See* SER 75-76 (Hansen Tr. 8:2-9:13).

[13] Alternatively, the Court may affirm on the separate, independent ground that the Textmunication platform is not an ATDS because human intervention is required to create and send texts. *See* Crunch's Answering Brief at 5-9, 12-13, 36-41. Neither the FCC nor *ACA Int'l* addressed case law analyzing human intervention as grounds for defeating a TCPA claim. *See* Crunch's Answering Brief [Dkt. 22] at 36-41 (discussing cases and the 2015 FCC ruling on this issue); *ACA Int'l*, 885 F.3d at 703.

10

**Form 8.**    **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 14-56834

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1. The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b). The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the longer length limit authorized by court order dated March 22, 2018. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is _____ words or 10 pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2(a) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2(c)(2) or (3) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant: s/ Ian C. Ballon     Date: May 4, 2018

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

9th Circuit Case Number(s) | 14-56834

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) May 4, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Ian C. Ballon

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)